[No. 13602.   Department One.   December 29, 1916.]

THE STATE OF WASHINGTON, *Respondent*, v.
TATSUO TAKANO, *Appellant*.[1]

EVIDENCE—JUDICIAL NOTICE. The courts will take judicial notice that "wood alcohol" is a poison.

HOMICIDE—SELLING POISON WITHOUT LABEL—INFORMATION. An information charging the accused with producing death through the sale of "wood alcohol" to be used as a beverage is sufficient without charging that it is a poison or that the accused knew it would produce death if drunk; especially in view of Rem. Code, § 2508, prohibiting the sale of any "preparation which according to standard works on medicine or *materia medica* is liable to be destructive to adult human life" unless it is labeled as a poison.

SAME—MANSLAUGHTER—INTENT. The act of selling unbranded poison, from which death results is manslaughter, although without intent to take human life, under Rem. Code, §§ 2392 to 2394.

CRIMINAL LAW—APPEAL—HARMLESS ERROR. One convicted of manslaughter through the sale of unbranded poison cannot move in arrest of judgment on the ground that he was guilty of murder in having sold it knowing that the deceased would drink it without knowledge of its poisonous quality.

HOMICIDE — SELLING POISONS — "WOOD ALCOHOL." Wood alcohol cannot be said to be not intoxicating, where it appears that the preliminary symptoms resemble those observed after an excessive dose of alcohol, although more marked.

[1]Reported in 162 Pac. 35.

CRIMINAL LAW—DEGREES OF OFFENSE—HARMLESS ERROR—INSTRUC-
TIONS. In a prosecution for manslaughter through the selling of
unbranded poison, in violation of Rem. Code, § 2507, it is not preju-
dicial error to instruct that one violating the act would be guilty
of a misdemeanor.

Appeal from a judgment of the superior court for King
county, Frater, J., entered February 19, 1916, upon a trial
and conviction of manslaughter. Affirmed.

*Peterson & Macbride*, for appellant.

*Alfred H. Lundin* and *Frank P. Helsell*, for respondent.

CHADWICK, J.—Appellant was charged with the crime of
manslaughter, under an information the material parts of
which follow:

"He, said Tatsuo Takano, in the county of King, state of
Washington, on the 7th day of January, 1916, then and
there being a druggist and pharmacist lawfully authorized
by the state board of pharmacy of the state of Washington,
to practice pharmacy and to fill prescriptions, in response to
a request and demand from one Tom Shannon for bottles of
alcohol for use as a beverage, did then and there wilfully,
unlawfully, knowingly and feloniously sell and deliver to said
Tom Shannon unlabeled bottles of intoxicating liquid con-
taining wood alcohol, the exact number of which is to the
prosecuting attorney unknown, with the intent that said
Tom Shannon should drink the said liquid as a beverage, and
therefore, to wit: on said 7th day of January, 1916, the
said Tom Shannon did drink of said liquid contained in said
bottles, and by reason of drinking said liquid did, on the 8th
day of January, 1916, die."

To this information, appellant demurred, and later moved
in arrest of judgment.

The first position assumed by appellant is that no crime
is charged, for, assuming that wood alcohol is an intoxicating
liquid, and that a quantity of it was sold to Shannon to be
drunk as a beverage, the information charges no more than
it would charge if it were alleged that ordinary grain alcohol
had been sold in an unlabeled bottle to be drunk as a bever-

age, which is no more than a misdemeanor, and upon which the charge of manslaughter could not be predicated. This contention rests upon the theory that it is nowhere alleged that wood alcohol is a poison, or that appellant knew it would produce death if drunk.

To hold the information good, we must hold that the use of the words "wood alcohol" is legally equivalent to the use of the word "poison"; that is, read the information as if it charged in words, "did then and there, etc.  .  .  .  sell and deliver to said Tom Shannon unlabeled bottles of intoxicating liquid containing poison, etc."; or, if it be put in another way, we must take judicial notice of the fact that wood alcohol is a poison. That we may do so, seems logically referable to two principles, one resting in the common law rules of construction, the other in the statutes of the state. Courts, from ancient times, have taken judicial notice of the qualities and properties of matter. While wood alcohol is an article which has come into general commercial use only in recent years, its poisonous and dangerous character is well known; it is within the common knowledge of men. Judicial notice of a fact is not rejected for the want of elapsed time, but only because a court cannot say that the fact has come to be so generally known as to be within the general range of human knowledge or understanding. The properties of many articles of comparatively recent use in the commercial world have been judicially noticed by the courts.

Without resorting to or assembling the cases, we have found, for instance, that the courts have held judicially that gasoline and dynamite are dangerous and explosive. The general use of such articles gives them a known character without reference to the time of their use. Nor is it necessary that we know from experience or demonstration that wood alcohol is a poison that will produce death, if the world knows generally that it contains properties that will do so in the event of its use.

"Where words have a settled, uniform and known meaning, and are universally understood as importing certain species or qualities, there is no rule of pleading that requires an averment that they belong to their appropriate genus or possess their appropriate qualities. The words 'Paris green' in and of themselves import that 'Paris green' is a poisonous substance, the same as the words rum, gin or brandy import that they are spirituous liquors." *State v. Labounty,* 63 Vt. 374, 21 Atl. 730.

But if there be any doubt of our right to notice wood alcohol *eo nomine* as a poison, that doubt would seem to be removed by reference to the statutes. Rem. Code, § 2508, provides:

"It shall be unlawful for any person to sell at retail or furnish any of the poisons named in the schedules hereinafter set forth, without affixing or causing to be affixed to the bottle, box, vessel or package, a label containing the name of the article and the word 'poison' distinctly shown, with the name and place of business of the seller, all printed in red ink, together with the name of such poison printed or written thereon in plain, legible characters, which schedules are as follows, to wit:"

Schedule "B," after enumerating certain poisons, proceeds, "or preparation, which, according to standard works on medicine or materia medica, is liable to be destructive to adult human life, etc.," indicating to our minds, when considered in connection with Id., § 2507, under which the charge is laid, an intent on the part of the legislature that those who dispense poisons under the law, as well as the courts, should take notice of the properties of all preparations in common use that are dangerous to human life.

We are, therefore, of opinion that the information is sufficient to charge appellant with substituting an article different from that ordered, with no notice to the vendee of its dangerous quality.

Whether the act of selling unbranded poison be regarded as lawful or unlawful, it is manslaughter under the statute,

for it matters not whether the death result from the performance of a lawful act negligently performed, or an unlawful act without specific intent to take human life.  Rem. Code, §§ 2392, 2393, 2394.

Counsel contends that if appellant sold the alcohol knowing that Shannon would drink it without knowing its poisonous quality, and that it would kill him if he did, appellant would be guilty of murder in the first degree.  But it seems to us that appellant cannot complain that he might have been prosecuted for murder.  We would be put to the anomaly of arresting judgment upon a plea that the accused had committed the same offense, a crime, but not in the manner and form as alleged, when, if his theory be true, that the information is sufficient to charge murder, he could plead *autrefois acquit*.

Certain errors growing out of the instructions are assigned. Those not covered by what we have said may be summarized: That Tom Shannon, the deceased, did not know the character of the liquid sold to him; that if it be true that the bottle contained an intoxicating liquid, then it could not have been wood alcohol, for the court will take judicial notice that wood alcohol is not intoxicating.

It is not material that the deceased should know that wood alcohol would cause his death.  The essence of the crime charged is the putting of a destructive agent in the hands of one who may, and who does, use it.  Ignorance or carelessness of the deceased is never a defense in cases of involuntary manslaughter.  The design of the drug statutes is to protect the ignorant and unwary.  If, on the other hand, deceased knew the poisonous quality of the article purchased, and intended suicide, as suggested by counsel, it would be a matter of defense.  It is not essential that an information or an indictment should anticipate or negative every possible defense.  Nor can we judicially notice that wood alcohol is not intoxicating.  While admitting that "it

is not possible to give many details concerning the general symptoms" of methyl alcoholic poisoning, Peterson & Haines, in their work on Legal Medicine and Toxicology, vol. 2, p. 535, find that: "In some cases there has been a condition of exhilaration and excitement closely similar to that caused by ethyl-alcohol."

"After the ingestion of poisonous doses of wood alcohol, the preliminary symptoms resemble those observed after an excessive dose of alcohol, such as an exhilaration followed by hebetude and narcosis; but the severe headache, nausea, violent and persistent vomiting, are more marked." 2 Wharton & Stille, Medical Jurisprudence (5th ed.), § 482.

With the opinion of such inquirers before us, we would not assume to say, as a matter of law, that wood alcohol is not intoxicating.

Finally, it is insisted that, in defining the crime—the unlawful act out of which the evil consequence now complained of grew—the court told the jury that any one guilty of violating § 2507 would be guilty of a misdemeanor, and thereafter refused to submit verdicts other than "guilty as charged" and "not guilty" to the jury. The definition of an unlawful act, or a lawful act carelessly and negligently done, was necessary as preliminary to the direction of the jury when considering the charge of involuntary manslaughter. The use of the words "shall be guilty of a misdemeanor" were not necessary, but they are certainly not prejudicial.

We have sustained the information before us, and, as it may seem, not without some labor, but it should not be understood that we commend it as a model of excellence or to be followed as a form. We feel justified, too, in saying that, with the general commercial use of wood alcohol, the use of the name "alcohol" by those who deal in the commodity, as a word descriptive of menthylated spirits, should be prohibited. The trade, in more than one instance, has under-

taken to do so, but without success. It should be made an offense by act of the legislature.

Affirmed.

MORRIS, C. J., MAIN, MOUNT, and ELLIS, JJ., concur.